Dale SNYDER, et al., Plaintiffs,

v.

ENTERPRISE RENT–A–CAR COMPANY, et al., Defendants

No. C 03–4234(BZ).

United States District Court, N.D. California.

Feb. 17, 2005.

Steven Bauer, Deepa Shailesh Vora, Latham & Watkins LLP, Jennifer L. Scafe, U.S. Securities & Exchange Commission, San Francisco, CA, Thomas Duley, Latham & Watkins, Menlo Park, CA, for Plaintiffs.

Dominique R. Shelton, Thomas P. Laffey, Folger Levin & Kahn LLP, Los Angeles, CA, Robert B. Hunter, Jeffery Richard Vincent, Esq., Martin T. Snyder, Snyder, Cornelius & Hunter, Pleasant Hill, CA, Janine Laura Scancarelli, Folger Levin & Kahn LLP, San Francisco, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION AND FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

(Docket Nos. 76, 86, 98)

CHESNEY, District Judge.

Before the Court are the motions of (1) defendants Enterprise Rent-A-Car Company of San Francisco ("ERAC-SF"), Enterprise Rent-A-Car ("ERAC"), and ELCO Administrative Services Company ("ELCO") for summary judgment or, in the alternative, partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and (2) plaintiffs Dale Snyder and Michael Snyder for summary adjudication of the issue of negligence as to Counts I and II, as to all defendants, and for summary judgment on Count IV, as to ERAC-SF and ERAC, pursuant to Rule 56. Having considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

---

1. By order filed January 21, 2005, the Court deemed the motions under submission on the papers.

## BACKGROUND

On August 18, 2002, Marc Holland ("Holland") rented a 2002 Ford Escort from ERAC–SF. (*See* Duley Decl., filed October 22, 2004, Ex. 5; Watt Decl., filed November 5, 2004, Ex. B.) At the time Holland rented the subject vehicle, his driver's license was suspended. (*See* Pls.' Req. for Judicial Notice, filed October 22, 2004, Ex. 2; Defs.' Req. for Judicial Notice, filed November 5, 2004, Ex. A; Defs.' Req. for Judicial Notice Ex. A.) [2] On August 25, 2002, Brooke Snyder was killed as a result of injuries sustained when, while walking across Lombard Street in San Francisco, she was struck by Holland as he was driving the rented vehicle. (*See* Pls.' Req. for Judicial Notice, filed October 22, 2004, Ex. 5; Defs.' Req. for Judicial Notice, filed November 5, 2004, Ex. B.) [3] On January 23, 2004, Holland pleaded guilty to violating the California Vehicle Code by, on August 25, 2002, driving under the influence of alcohol, a drug, and the combined influence of alcohol and a drug, and by driving with 0.08 percent, or more, by weight, of alcohol in his blood. (*See* Pls.' Req. for Judicial Notice, filed October 22, 2004, Exs. 3, 4.) [4]

Plaintiffs, who are the parents and successors in interest of the decedent, (*see* First Amended Complaint ¶ 1), allege that defendants are liable for the death of the decedent. In the First Amended Complaint ("FAC"), plaintiffs allege four claims against each defendant: (1) Personal Injury and Property Damages, based on the theory that the decedent sustained injury as a result of defendants' negligent entrustment of the vehicle to Holland; (2) Wrongful Death, based on the theory plaintiffs sustained injury as a result of the negligent entrustment; (3) Permissive Use, based on the theory that defendants are vicariously liable for the negligence of Holland; and (4) Unfair Competition, based on the theory that defendants have a practice of renting vehicles to unlicensed drivers.

## LEGAL STANDARD

Rule 56 provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c).

The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has

2. The Court grants the parties' respective requests for judicial notice of the records of the Department of Motor Vehicles ("DMV"). *See, e.g., Shaghoian v. Aghajani,* 228 F.Supp.2d 1107, 1109 n. 4 (C.D.Cal.2002) (taking judicial notice of DMV records).

3. The Court grants the parties' respective requests for judicial notice of the Medical Examiner/Investigator's Report. *See People v. Wardlow,* 118 Cal.App.3d 375, 388, 173 Cal. Rptr. 500 (1981) (holding autopsy report is public record under California law).

4. The Court grants plaintiffs' unopposed request for judicial notice of the criminal complaint and minutes of proceedings conducted in *People v. Holland,* Action No. 021202785, filed in the Superior Court of California, in and for the County of San Francisco. *See, e.g., Quackenbush v. Allstate Ins. Co.,* 121 F.3d 1372, 1377 n. 3 (9th Cir.1997) (taking judicial notice of judgment and minutes filed in state court proceeding).

done so, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Rule 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). When determining whether there is a genuine issue for trial, "'inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.'" *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

## DISCUSSION

Defendants argue that they are entitled to summary judgment on all of plaintiffs' claims. Plaintiffs argue that they are entitled to summary adjudication, as to all defendants, on the issue of defendants' negligence, and, as to defendants ERAC and ERAC–SF, summary judgment on the unfair competition claim.

### A. Counts I and II (Negligent Entrustment)

■ In Counts I and II, plaintiffs allege defendants were negligent when they rented a vehicle to Holland, a person with a suspended license. Under California law,[5] "one who places or entrusts his or her motor vehicle in the hands of one whom he or she knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable for an injury inflicted by the use made thereof by that driver." *See Osborn v. Hertz Corp.,* 205 Cal.App.3d 703, 708, 252 Cal.Rptr. 613 (1988) (internal quotation, alterations, and citation omitted). Here, plaintiffs seek to impose liability for negligent entrustment under two theories. First, plaintiffs contend that defendants were negligent per se when they violated a statute precluding the rental of a vehicle to a person without a valid license. Second, plaintiffs contend that, irrespective of any statutory violation, circumstances existed from which defendants knew or should have known that Holland was unfit to drive.

In their motion, plaintiffs argue that they are entitled to summary adjudication of the issue of negligence per se as to defendants ERAC and ERAC–SF, and are entitled to summary adjudication of the issue of common law negligence as to all defendants. In their motion, defendants argue that ERAC and ELCO are entitled to summary judgment because there is no evidence either of those two defendants entrusted the subject vehicle to Holland, and that ERAC–SF is entitled to summary judgment because there is no evidence it acted negligently or, alternatively, that any negligence by ERAC–SF was not a cause of the decedent's death. Finally, in the event plaintiffs demonstrate defendants can be held liable for negligence, defendants argue, they are entitled to summary judgment on plaintiffs' claim for punitive damages.

#### 1. ERAC and ELCO

■ It is undisputed that, at the time of the rental and the accident, the subject

---

5. The Court has diversity jurisdiction over plaintiffs' claims, and the parties agree that California law governs the claims.

vehicle Holland rented was owned by ERAC–SF, (*see* Watt Decl., filed November 5, 2004, ¶ 5, Ex. A) and that Holland rented the vehicle from ERAC–SF, (*see id.* ¶ 6, 252 Cal.Rptr. 613, Ex. B). It is also undisputed that ERAC–SF is a wholly owned subsidiary of ERAC, (*see* Duley Decl., filed October 22, 2004, Ex. 1 at 9:17–19), and that ELCO is ERAC's "insurance subsidiary," (*see* Rogers Dep.[6] at 23:4–5).

Defendants argue that ERAC and ELCO, as a matter of law, cannot be liable under a theory of negligent entrustment because neither ERAC nor ELCO rented or otherwise supplied the vehicle to Holland. Plaintiffs respond that a triable issue of fact exists as to whether ERAC and ELCO were "integral participants" in the rental by ERAC–SF, and, consequently, are liable for their own conduct with respect to the rental to Holland. (*See* Pls.' Opp. to Defs.' Mot. for Summ. J, filed November 23, 2004, at 6:11–12.)[7]

Plaintiffs offer evidence that ERAC operates a centralized rental and reservation system, specifically, that ERAC operates a website on which reservations can be made at locations throughout the United States and other countries, (*see* Duley Decl., filed November 19, 2004, Ex. 38), and that when ERAC's subsidiary ERAC–SF engages in a rental transaction with a customer, ERAC–SF uses computer terminals to access ERAC's software, known as "ECARS," to accomplish the rental transaction, (*see* Rogers Dep. at 25–26; Sinclair Dep.[8] at 67). Plaintiffs also offer evidence that ERAC maintains, as part of the ECARS software program, a nationwide "do-not-rent" list, (*see* Rogers Dep. at 33), which ERAC–SF has the ability to update to include the names of ERAC–SF customers who, *inter alia,* "had too many accidents in a short period of time with [ERAC–SF] vehicles," who "allowed an unauthorized driver to use the vehicle," and/or who drove an ERAC–SF vehicle on a suspended or revoked license, (*see* Sinclair Dep. at 60–62). Plaintiffs further offer evidence that ERAC has evaluated the use of electronic verification systems to check the validity of driver's licenses with the DMV, but has not recommended that its subsidiaries employ such a system. (*See* Kaplan Dep.[9] at 60, 169.)

The above evidence, viewed in the light most favorable to plaintiffs, supports a finding that ERAC supplies its subsidiary ERAC–SF with software and other support to enable ERAC–SF to obtain reservations, to engage in rental transactions, and to maintain a list of persons to whom further rentals are ill-advised, and that ERAC is of the view that ERAC–SF need not electronically verify with the DMV the validity of driver's licenses.[10] Such evi-

---

6. Excerpts from the deposition of M.W. Rogers are attached as Ex. 1 to the Declaration of David A. York.

7. Defendants also argue that plaintiffs cannot establish a basis for ignoring the separate corporate identities of defendants, and thus ERAC cannot be held liable for the conduct of ERAC–SF or ELCO under an alter ego theory. *See Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc.,* 116 Cal. App.3d 111, 119, 172 Cal.Rptr. 74 (1981) (holding parent corporation liable for tort of subsidiary "only where the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former"). Because plaintiffs have indicated they

are not seeking to hold ERAC liable for the acts of its subsidiaries, but, rather, for ERAC's own actions, (*see* Pls.' Reply Brief, filed December 1, 2004, at 2:26–27), the Court does not further consider the issue of alter ego.

8. Excerpts from the deposition of Andrew Sinclair are attached as Ex. 5 to the Declaration of David A. York, and as Ex. H to the Declaration of Janine L. Scancarelli.

9. Excerpts from the deposition of Lee Kaplan are attached as Ex. 9 to the Declaration of David A. York.

10. Plaintiffs offer no evidence from which it can be inferred that ERAC has refused to

dence, however, does not support a finding that ERAC was the entity that rented or otherwise supplied the vehicle to Holland.

■ Plaintiffs also argue that both ERAC and ELCO should have added Holland to the nationwide "do-not-rent" list available to ERAC–SF, based on ERAC and ELCO's knowledge of a February 2001 accident in which Holland had been involved while driving an ERAC–SF vehicle.[11] Plaintiffs reason that because neither ERAC nor ELCO added Holland to the do-not-rent list after the February 2001 accident, each of them is responsible, by way of omission, for ERAC–SF's renting the subject vehicle to Holland. Plaintiffs, however, offer no evidence that ELCO has the ability to add anyone to the do-not-rent list. Plaintiffs also fail to offer any evidence that the type of minor accident in which Holland was involved, in February 2001, is the type of accident that normally would have caused ERAC to place the driver on the do-not-rent list. Further, plaintiffs fail to advance an adequate basis for the Court to recognize a duty on the part of ERAC or ELCO to place an individual who has a minor accident on a do-not-rent list.

Accordingly, because plaintiffs have not shown the existence of a triable issue of fact as to either ERAC or ELCO's having directly entrusted the subject vehicle to Holland, or a duty on the part of ERAC or ELCO to place Holland on the do-not-rent list, defendants are entitled to summary judgment in favor of ERAC and ELCO on Count I and Count II, and plaintiffs are not entitled to summary adjudication with respect to ERAC or ELCO on the issue of negligence.

### 2. ERAC–SF

As noted, it is undisputed that ERAC–SF entrusted a vehicle to Holland. Plaintiffs allege such entrustment was negligent, both under a per se theory and under a common law theory.

### a. Negligence Per Se

■ Under California law, "proof of the defendant's violation of a statutory standard of conduct raises a presumption of negligence that may be rebutted only by evidence establishing a justification or excuse for the statutory violation." *See Ramirez v. Plough, Inc.,* 6 Cal.4th 539, 547, 25 Cal.Rptr.2d 97, 863 P.2d 167 (1993).

allow ERAC–SF to employ an electronic verification program. Indeed, plaintiffs offer evidence that ERAC recommended that ELRAC, an ERAC subsidiary operating in New York that had been employing electronic verification, cease the use of electronic verification, but that ELRAC continued to use electronic verification. (*See* Kaplan Dep. at 146, 169.)

11. On February 6, 2001, Holland, while backing out of his residence in a vehicle he had rented from ERAC–SF, struck another vehicle. (*See* Duley Decl., filed October 22, 2004, Exs. 8, 9.) Holland reported the February 2001 accident to ERAC–SF, which in turn reported the accident to ELCO. (*See id.* Ex. 9.) The accident reportedly caused $374.35 in damage to ERAC–SF's vehicle, (*see id.* Ex. 8), and ERAC–SF paid $208.57 to the driver of the other vehicle to settle that driver's

claim, (*see* Watt Decl. ¶ 13). This accident ultimately resulted in the suspension of Holland's license for violation of § 16004(a) of the California Vehicle Code, which, at the time, provided for suspension where a driver failed to report to the DMV an accident resulting in more than $500 in property damage to any person, and for violation of § 16070, which, at the time, provided for suspension where the driver involved in an accident failed to provide proof of financial responsibility. *See* Pls.' Req. for Judicial Notice Ex. 2; *see also* Cal. Veh.Code §§ 16000(a), 16004(a), 16070(a). The record before this Court does not disclose the basis for the DMV's findings that the accident resulted in more than $500 in property damage to any person and that Holland failed to provide proof of financial responsibility.

Here, plaintiffs argue the relevant statutory standard of conduct for car rental companies is set forth in § 14608(a). Section 14608 provides:

No person shall rent a motor vehicle to another unless:

(a) The person to whom the vehicle is rented is licensed under this code or is a nonresident who is licensed under the laws of the state or country of his or her residence.

(b) The person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared the signature thereon with the signature of that person written in his or her presence.

(c) Nothing in this section prohibits a blind or disabled person who is a nondriver from renting a motor vehicle, if [certain] conditions exist....

See Cal. Veh.Code § 14608.

"Vehicle Code Section 14608 prohibits a rental car agency from renting to unlicensed drivers." *Osborn,* 205 Cal.App.3d at 709, 252 Cal.Rptr. 613. "A rental car agency may therefore be liable for negligently entrusting a car to an unlicensed driver." *Id.* Under a plain reading of § 14608, ERAC–SF violated the provisions of subsection (a) thereof when it rented to Holland the vehicle Holland was driving on the evening he struck the decedent, because Holland was not licensed to drive at that time.[12]

Defendants argue that ERAC–SF did not violate § 14608(a) because defendants complied with § 14608(b). Under defendants' interpretation of § 14608, a car rental agency's only statutory duty thereunder is to inspect the renter's license and to compare the signature on the license to the signature of the renter, i.e., to perform the duties set forth in § 14608(b).[13] Such interpretation of § 14608, however, would render subsection (a) entirely superfluous and unnecessary. Courts "do not presume that the Legislature performs idle acts, nor do [they] construe statutory provisions so as to render them superfluous." *See Shoemaker v. Myers,* 52 Cal.3d 1, 22, 276 Cal.Rptr. 303, 801 P.2d 1054 (1990). Consequently, the fact that ERAC–SF complied with § 14608(b) does not, by itself, preclude a finding that ERAC–SF did not comply with § 14608(a).

Defendants next argue they did not know that Holland's license was suspended and that § 14608(a) should be interpreted as containing an implied scienter requirement. Specifically, defendants argue that § 14608(a) should be interpreted as only prohibiting a person from knowingly renting a vehicle to someone who does not have a valid license. The California Supreme Court has stated, however, that § 14608(a) does not contain a scienter requirement. *See In re Murdock,* 68 Cal.2d 313, 316 n. 7, 66 Cal.Rptr. 380, 437 P.2d 764 (1968) (listing examples of Vehicle Code statutes that contain, and do not contain, a scienter requirement; identifying § 14608, which "forbids renting an automobile to an unlicensed driver," as example of statute without scienter requirement).

---

**12.** Defendants, relying on Holland's testimony that he did not receive actual notice of the suspension until after the accident, (*see* Holland Dep. at 33:14–23), argue that because Holland did not know his license was suspended when he rented the vehicle, he was legally entitled to drive in California. Although a person cannot be convicted of driving on a suspended license in the absence of evidence the person had knowledge of the suspension, *see* Cal. Veh.Code § 14601, defendants cite no authority, and the Court has found none, that a suspension does not become effective until the licensee receives actual notice thereof.

**13.** Plaintiffs do not contend, at least for the purposes of the instant motions, that ERAC–SF did not comply with § 14608(b).

■ Defendants correctly observe that the interpretation of § 14608(a), as set forth in *Murdock,* was dicta.[14] A federal district court sitting in diversity, however, is "bound to follow the considered dicta as well as the holdings of the California Supreme Court." *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1164 (9th Cir.1995) (holding district court, when applying California law, erred by rejecting dicta contained in California Supreme Court opinion). Defendants, nevertheless, argue that statutory language found in § 14604, which was enacted in 1994, establishes that the California Legislature intended that § 14608(a) have a scienter requirement. In other words, defendants are arguing that the California Supreme Court would, today, conclude that, in light of the Legislature's 1994 enactment of § 14604, § 14608(a) contains a scienter requirement.

Section 14604 provides as follows:

(a) No owner of a motor vehicle may knowingly allow another person to drive the vehicle upon a highway unless the owner determines that the person possesses a valid driver's license that authorizes the person to operate the vehicle. For the purposes of this section, an owner is required only to make a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle. An owner is not required to inquire of the department whether the prospective driver possesses a valid driver's license.

(b) A rental company is deemed to be in compliance with subdivision (a) if the company rents the vehicle in accordance with Sections 14608 [15] and 14609.[16]

*See* Cal. Veh.Code § 14604.

As noted, defendants assert that enactment of § 14604 had the effect of adding, apparently by implication, a scienter requirement to § 14608(a). Defendants reason that because § 14604(a) prohibits an owner from "knowingly" allowing an unlicensed person to drive the owner's vehicle, and "because § 14604(b) makes subdivision (a) expressly applicable to rental companies," the knowledge requirement "applies equally to the general provisions of section 14604(a) and to the specific provisions in section 14608." (*See* Defs.' Opp. to Pls.' Mot. for Summ. Adj. and Summ. J., filed November 18, 2004, at 10:11–13.)

■ Contrary to defendants' suggestion, there is no inconsistency between requiring knowledge to establish a violation of § 14604(a), while not requiring knowledge to establish a violation of § 14608(a). Section 14604(a) applies to all vehicle owners, while § 14608(a) applies to a narrower class, specifically, persons who rent vehicles. Significantly, a violation of § 14604(a) constitutes a misdemeanor, while a violation of § 14608(a) constitutes an infraction. *See* Cal. Veh.Code § 40000.1 (providing,

**14.** The issue presented in *Murdock* was whether the word "knowledge," as found in a criminal statute prohibiting a person from driving with "knowledge" of a suspension, refers only to actual knowledge or also includes constructive knowledge. *See id.* at 315–16, 66 Cal.Rptr. 380, 437 P.2d 764 (interpreting Cal. Veh.Code § 14601).

**15.** Read in context, it appears this is a reference to the requirements set forth in § 14608(b).

**16.** Section 14609 requires a person renting a motor vehicle to another to "keep a record of the registration number of the motor vehicle rented, the name and address of the person to whom the vehicle is rented, his or her driver's license number, the jurisdiction that issued the driver's license, and the expiration date of the driver's license," *see* Cal. Veh.Code § 14609(a), and to record certain information if the person to whom the vehicle is rented is a blind or disabled "nondriver," *see* Cal. Veh. Code § 14609(b).

"[e]xcept as otherwise provided," violation of Vehicle Code is "infraction"); Cal. Veh. Code § 40000.11(*l*) (providing violation of § 14604 is "misdemeanor"). Thus, a vehicle owner who rents his vehicle to another without a valid license is guilty of an infraction, irrespective of whether the owner has knowledge of the invalid license, while such owner would be guilty of a misdemeanor only if he had knowledge of the invalid license. The Legislature may well have determined that a person who obtains financial benefit from allowing another to rent his vehicle should be subject, in the event he rents to another who lacks a valid license, to liability for an infraction without fault, given the dangers to the public posed by unlicensed drivers. *See People v. Vogel,* 46 Cal.2d 798, 801, fn. 2, 299 P.2d 850 (1956) (observing strict liability criminal offenses are "enacted for the protection of the public health and safety," that they "usually involve light penalties," and that "wrongful intent is not required in the interest of enforcement").

Moreover, the California Legislature has been on notice since 1968 that the California Supreme Court has interpreted § 14608(a) as not including a scienter requirement, and has had ample opportunity to amend the statute if it was of the opinion that *Murdock* had gotten it wrong. Defendants fail to explain why the California Legislature, if in fact it intended to add a scienter requirement to § 14608(a), would have done so under the rather convoluted process described by defendants, rather than by the more direct manner of simply amending § 14608(a).[17] In any

event, the Court finds defendants have failed to show that federal district courts sitting in diversity are not bound by *Murdock* and, further, even in the absence of the California Supreme Court's pronouncement in *Murdock,* that § 14608(a) should be interpreted as containing an implied scienter requirement.

■ Consequently, the Court finds it is undisputed that ERAC–SF violated § 14608(a). As a result, plaintiffs are entitled to a presumption that ERAC–SF was negligent. *See Ramirez,* 6 Cal.4th at 547, 25 Cal.Rptr.2d 97, 863 P.2d 167 ("proof of the defendant's violation of a statutory standard of conduct raises a presumption of negligence").

The presumption of negligence "may be rebutted only by evidence establishing a justification or excuse for the statutory violation." *See id.; see, e.g., Berkovitz v. American River Gravel Co.,* 191 Cal. 195, 199–200, 215 P. 675 (1923) (holding trial court erred by instructing jury to find defendant negligent if he violated statute prohibiting driving at night without tail light, because defendant was not negligent if he established "good excuse" for violation; stating if jury credited driver's testimony that "tail light was burning three or four blocks east of the place of the accident, they might have concluded, under proper instructions, that he was not guilty of negligence even though the light was out when the collision occurred"). Here, however, defendants fail to advance a justification or excuse for the statutory violation. Rather, defendants have argued only that ERAC–SF did not violate the statute.

17. Certainly the California Legislature is aware of how to enact, or amend, a statute with a scienter requirement. For example, § 14606(a) states, "No person shall employ or hire any person to drive a motor vehicle nor shall he knowingly permit or authorize the driving of a motor vehicle, owned by him or under his control, upon the highways by any person unless the person is then licensed for

the appropriate class of vehicle to be driven." *See* Cal. Veh.Code § 14606(a). Section 14606(a) thus prohibits two acts: (1) hiring a person to drive who is not licensed, an act for which the Legislature chose not to require scienter, and (2) permitting or authorizing a person to drive who is not licensed, an act for which the Legislature chose to include a scienter requirement. *See id.*

Accordingly, plaintiffs are entitled to summary adjudication as to the issue of ERAC–SF's negligence per se.

### b. Common Law Negligence

■ Plaintiffs also argue they are entitled to summary adjudication as to the issue of negligence, based on their theory that ERAC–SF knew or should have known that Holland was not fit to drive.

■ Under the common law of negligent entrustment, a "defendant's conduct is to be measured by what an ordinarily prudent person would do in similar circumstances." *See Osborn*, 205 Cal.App.3d at 709, 252 Cal.Rptr. 613.

Plaintiffs, relying on evidence that an electronic verification system is commercially available, whereby a car rental agency can check the records of the California DMV to determine the current status of a license, (*see* Bauer Decl., filed October 22, 2004, Ex. 3; Regan Dep.[18] at 11:19—12:7, 16:8–19), argue that an ordinarily prudent person in ERAC–SF's position would not have rented to Holland unless it had first electronically checked the DMV records. Additionally, plaintiffs, relying on evidence that ERAC–SF knew of Holland's 2001 accident and knew that its staff had to repeatedly contact Holland to get Holland to pay deposits and rental fees, (*see* Duley Decl., filed October 22, 2004, Exs. 9, 11), argue that an ordinarily prudent person in ERAC–SF's position would have added Holland to the ERAC do-not-rent list and then, when Holland sought to rent a vehicle on August 18, 2002, would have declined to allow the rental in light of Holland's inclusion on that list.

■ "A defendant's negligence may be determined as a matter of law only if reasonable jurors following the law could draw only one conclusion from the evidence presented." *Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 971, 227 Cal.Rptr. 106, 719 P.2d 676 (1986) (holding jury entitled to determine whether defendant was negligent when he asked plaintiff nephew to accompany him on one-seat tractor, from which plaintiff fell and sustained injury). Here, it is undisputed that ERAC–SF does not employ an electronic program enabling it to check DMV records, and it is undisputed that ERAC–SF did not add Holland to the do-not-rent list. The Court finds, however, that whether a person of ordinary prudence, in the same situation, would have taken the same or different action cannot be resolved as a matter of law. For example, there is conflicting evidence as whether the use of DMV verification programs is standard practice within the rental car industry in California or elsewhere. (*See, e.g.*, Duley Decl., filed October 22, 2004, Ex. 21; Kaplan Decl., filed November 18, 2004, ¶¶ 36–42.) Further, there is no showing that ERAC–SF or other car rental agencies normally place customers who have minor accidents or who are late in paying bills on do-not-rent lists or, more importantly, that such actions by a customer are necessarily indicative of the customer's incompetence as a driver.

Accordingly, plaintiffs have not shown they are entitled to summary adjudication as to the issue of ERAC–SF's negligence under the common law of negligent entrustment.

### c. Causation

■ In a negligence case, causation is established where the defendant's negligent act was a "substantial factor in bringing about the plaintiff's injury," and there

---

**18.** Excerpts from the deposition of Richard Regan are attached as Ex. 2 to the Declaration of Steven Bauer, filed October 22, 2004.

is no "intervening or superseding cause." *See Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 288–89, 12 Cal. Rptr.3d 846 (2004) (internal quotation and citation omitted). Plaintiffs and defendants each argue that the issue of causation can be determined summarily. Specifically, the parties argue that the issue of whether Holland's negligent driving was a superseding cause can be determined summarily.

▬▬ Holland's act of striking the decedent with ERAC–SF's vehicle, while Holland was driving under the influence, constitutes an "intervening act" that was the "immediate cause in fact of the injuries." *See Landeros v. Flood,* 17 Cal.3d 399, 411, 131 Cal.Rptr. 69, 551 P.2d 389 (1976) (holding, where minor plaintiff alleged defendant physician was negligent per se by failing to alert authorities plaintiff appeared to be victim of child abuse, "continued beating inflicted on plaintiff by [relatives] after she was released from [defendant's care]" constituted "intervening act that was the immediate cause" of plaintiff's injuries). Nevertheless, under California law, "an intervening act does not amount to a superseding cause relieving the negligent defendant of liability if it was reasonably foreseeable." *See id.* (internal quotation omitted and citation omitted).

▬▬ Defendants, in support of their motion, essentially argue that Holland's act of driving under the influence was an unforeseeable superseding cause of the injuries incurred by the decedent. "To show [another's] act was a superseding cause, [the defendant] must establish as a matter of law that the intervening act was so highly unusual or extraordinary that the occurrence was not likely to happen and therefore was not foreseeable." *Vasquez,* 118 Cal.App.4th at 289, 12 Cal.Rptr.3d 846. Here, as plaintiffs point out, the California Legislature has determined that a driver with a suspended license is significantly more likely than a licensed driver to be involved in a fatal accident. Specifically, the California Legislature has determined that "[a] driver with a suspended license is four times as likely to be involved in a fatal accident as a properly licensed driver." *See* Cal. Veh.Code § 14607.4(b). As noted above, plaintiffs have established that ERAC–SF was negligent per se in renting a vehicle to a driver with a suspended license. Under the circumstances, the Court cannot find, as a matter of law, that Holland's driving under the influence was "so highly unusual or extraordinary that the occurrence was not likely to happen and therefore was not foreseeable." *See Vasquez,* 118 Cal.App.4th at 289, 12 Cal. Rptr.3d 846; *see also, e.g., Tellez v. Saban,* 188 Ariz. 165, 933 P.2d 1233, 1236, 1239–1241 (Ct.App.1997) (holding, under Arizona law, where car rental agency rented vehicle to unlicensed driver who subsequently drove under the influence and killed plaintiff's decedent, driver's negligent driving "was neither abnormal nor extraordinary," and thus fact-finder could conclude car rental agency's negligent entrustment to unlicensed driver was a cause of decedent's death).

▬▬ Plaintiffs, in their motion, argue that in light of the California Legislature's finding that a driver with a suspended license is four times more likely to be involved in a fatal accident, Holland's negligent driving cannot, as a matter of law, be considered an unforeseeable intervening cause. In other words, plaintiffs' argument appears to be that Holland, as a result of his lack of a valid license was, as a matter of law, a foreseeably incompetent driver, and that driving under the influence is simply one variant of incompetent driving. "[W]hether the intervening act of a third person [is] foreseeable and therefore [does] not constitute a superseding cause" is, generally, a question of fact for the trier of fact. *See Landeros,* 17 Cal.3d at 411, 131 Cal.Rptr. 69, 551 P.2d 389.

Plaintiffs do not contend that the legislative finding on which they rely is conclusive. Further, Holland's license was suspended for failing to report an accident and failing to demonstrate proof of financial responsibility, conduct that is not necessarily connected with incompetent driving. Under the circumstances, the Court finds the question of whether Holland's incompetent driving was foreseeable is a matter to be determined by the trier of fact. *See id.*

Accordingly, the Court finds that neither plaintiffs nor defendants are entitled to summary adjudication as to the issue of causation.

### d. Punitive Damages

■ Defendants argue that plaintiffs cannot establish a factual basis for an award of punitive damages. Plaintiffs argue that they have offered sufficient evidence to support a finding of liability for punitive damages, or, alternatively, that sufficient cause exists to grant plaintiffs a continuance pursuant to Rule 56(f).[19]

■ Under California law, punitive damages are available where "the defendant has been guilty of oppression, fraud, or malice." *See* Cal. Civ.Code § 3294(a). Where, as here, a plaintiff seeks to impose liability based on negligent conduct, such plaintiff can establish "malice," for purposes of punitive damages, by submitting evidence that the defendant acted with a "conscious disregard of the safety of others." *See Taylor v. Superior Court,* 24 Cal.3d 890, 895, 157 Cal.Rptr. 693, 598 P.2d 854 (1979). "In order to justify an

award of punitive damages on this basis, the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he wilfully and deliberately failed to avoid those consequences." *Id.*

Here, plaintiff offers evidence that, in 1995, Richard E. Bergin ("Bergin"), then ERAC's Vice President of Corporate Risk Management, was advised that the cost to verify the status of a California license was $1.00. (*See* Duley Decl., filed October 22, 2004, Ex. 26; Kaplan Dep. at 22:13—23:2.) Plaintiffs further offer evidence that Bergin, in 1996, was advised of the results of an internal "study" of 485 renters, specifically, results showing that 32 of the renters had "invalid" licenses, as well as the study's conclusion that "running driver's license checks for just license validity would be the most efficient and economical option."[20] (*See* Duley Decl., filed October 22, 2004, Ex. 29.)

Additionally, plaintiffs offer evidence that, on February 23, 1997, William Holekamp ("Holekamp"), then ERAC Executive Vice–President, met with Bergin to discuss "D/L [driver's license] record checks," at which time Holekamp concluded that the status of licenses should not be checked, other than in New York, (*see id.* Ex. 33; Kaplan Dep. at 60:12–16), and that on the next day, February 24, 1997, Bergin, at Holekamp's request, asked his staff for further "analysis" of the subject, and stated that once he received the further analysis, he would determine whether ERAC "could pass this risk to an insurance company cheaper than TML's[21] cost," (*see* Du-

---

**19.** Plaintiffs seek a continuance only insofar as defendants' motion seeks summary judgment on plaintiffs' claim for punitive damages.

**20.** Other options studied included checking whether renters had prior "DUI/DWI" convictions and whether they had other prior "violations." (*See id.*)

**21.** "TML" is a reference to TML Information Services, a company that provides electronic driver's license verification services. (*See* Bauer Decl., filed October 22, 2004, Ex. 2 at 17–19.)

ley Decl., filed October 22, 2004, Ex. 33). Plaintiffs also offer evidence that, thereafter, Bergin retired and was replaced by Lee Kaplan ("Kaplan"), (*see* Kaplan Dep. at 22:13–21), who reviewed cost/benefit analyses regarding electronic driver's license checks throughout 1997, (*see id.* at 121:10—141:7). One such analysis, reviewed by Kaplan, stated that the annual amount of losses that would be avoided by use of TML would be $1,060,000, while the annual cost of using TML would be $2,000,000. (*See id.* at 133:20—138:6; York Decl. Ex. 17.) Plaintiffs further offer Kaplan's deposition testimony that the reason he had never recommended use of an electronic verification system was because, in his opinion, "TMLs are simply not an effective tool in dealing with controlling accident costs." (*See id.* at 169:17–25.)

The Court finds that the above-referenced evidence, construed in the light most favorable to plaintiffs, would be sufficient to support a finding that defendants [22] were aware that, in the absence of taking any step to verify license validity, they would inevitably rent vehicles to persons who were not licensed, and that defendants chose to run the risk that the losses caused by such drivers being involved in accidents would be less than the cost of verifying licenses. In other words, plaintiffs' evidence is sufficient to support a finding that defendants were "aware of the probable dangerous consequences of [their] conduct, and that [they] wilfully and deliberately failed to avoid those consequences." *See Taylor*, 24 Cal.3d at 895, 157 Cal.Rptr. 693, 598 P.2d 854.

Accordingly, the Court finds defendants are not entitled to summary judgment on plaintiffs' claim for punitive damages.[23]

## B. Count III (Vicarious Liability)

In Count III, plaintiffs allege that Holland was negligent when he struck the decedent while driving ERAC–SF's vehicle, and that defendants are vicariously liable for Holland's negligence under § 17150 of the California Vehicle Code. Defendants argue they are entitled to summary judgment on this claim.

■ "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of a motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner." Cal. Veh.Code § 17150. Only the registered owner of the vehicle and, in limited circumstances, the holder of a security interest in the vehicle, is an "owner" for the purposes of § 17150. *See Campbell v. Security Pacific Nat'l Bank*, 62 Cal.App.3d 379, 385, 133 Cal.Rptr. 77 (1976).

■ Here, as discussed above, it is undisputed that neither ERAC nor ELCO owned the vehicle Holland was driving at the time the decedent was killed. Accordingly, ERAC and ELCO are entitled to summary judgment on this claim.

■ Defendants argue that ERAC–SF, although the registered owner of the vehi-

---

**22.** The parties, in discussing plaintiffs' evidence pertinent to their claim for punitive damages, refer to all defendants collectively. The parties have not addressed whether any of the individuals referenced in plaintiffs' evidence was an "officer, director, or managing agent" of ERAC–SF. *See* Cal. Civ.Code § 3294(b) (providing, where defendant is a corporation, wrongful acts giving rise to

award of punitive damages must be committed by defendant's "officer, director, or managing agent"). Consequently, the Court does not consider that issue.

**23.** In light of this finding, the Court does not address plaintiffs' request for a continuance, pursuant to Rule 56(f).

cle, is likewise entitled to entitled to summary judgment on this claim, on the ground plaintiffs are, in light of their having settled their claims against Holland, barred from seeking further relief against ERAC–SF under § 17150.

■ Plaintiffs, in the course of a separate action instituted against Holland, settled their claims against Holland. (*See* Dale Snyder Dep.[24] at 9:7–12.) In *Burton v. Gardner Motors, Inc.*, 117 Cal.App.3d 426, 172 Cal.Rptr. 647 (1981), the Court of Appeal held that "[t]he owner and operator of a vehicle are considered joint tortfeasors and are jointly and severally liable for the same damages up to the limit specified in the statute for the owner's liability." *See id.* at 431, 172 Cal.Rptr. 647.[25] Consequently, where a plaintiff obtains a judgment against one of the two joint tortfeasors, the other tortfeasor is "discharged" from further liability. *See id.* 432, 172 Cal.Rptr. 647 (holding where plaintiff accepted from driver $8500 in satisfaction of judgment against driver, owner became discharged from further liability to plaintiff under § 17150).

Plaintiffs argue that because they did not obtain the statutory limit from Holland, they are entitled to proceed against ERAC–SF for the difference.[26] *Burton*, however, explains that if a plaintiff obtains a recovery against the driver, such acceptance bars recovery against the owner under § 17150, even if the amount recovered from the driver is less than the "statutory maximum liability of the discharged [owner]." *See id.* at 431, 172 Cal.Rptr. 647.

Accordingly, ERAC–SF is entitled to summary judgment on the § 17150 claim.[27]

## C. Count IV (Unfair Business Practices)

In Count IV, plaintiffs allege that defendants are engaging in an unlawful business practice in violation of § 17200 of the Business and Professions Code. The alleged practice is "[r]enting automobiles to unlicensed customers." (*See* FAC ¶ 44.) This practice, according to plaintiffs, occurs because "[d]efendants do not have an adequate system in place to ensure that their vehicles are being rented to qualified drivers who possess California driver's licenses." (*See id.*) Defendants argue that all defendants are entitled to summary judgment on this claim, while plaintiffs assert

---

24. Excerpts from the deposition of Dale Snyder are attached as Ex. B to the Declaration of Dominique R. Shelton.

25. The current limit of liability imposed upon an owner under § 17150 is $15,000 for injury to any one person. *See* Cal. Veh.Code § 17151(a).

26. The terms of the settlement between plaintiffs and Holland are confidential. Although plaintiffs have offered to produce the terms to the Court, such production is unnecessary in light of the Court's ruling on the § 17150 claim.

27. Defendants alternatively argue that because the rental contract between ERAC–SF and Holland included a provision that Holland would not use the vehicle "in violation of any law," (*see* Watt Decl. Ex. B ¶ 1), defendants cannot be held vicariously liable for Holland's negligence. This alternative argument is not persuasive. Defendants cite no authority for their argument that a rental car agency can avoid vicarious liability by including, in a form contract, a provision that the borrower will not drive in a negligent manner. The lack of any such authority is not surprising given that such interpretation of § 17150 would effectively eviscerate the statute as it pertains to rental car agencies. *See Burgess v. Cahill*, 26 Cal.2d 320, 323, 158 P.2d 393 (1945) (stating legislative purpose behind § 17150 is "to protect innocent third parties from the careless use of automobiles," and that "this protection should be paramount to the rights of an owner who has permitted the use of his car by others even though he, personally, was not guilty of negligence.")

they are entitled to summary judgment as to defendants ERAC and ERAC–SF.

■ At the outset, the Court finds, for the reasons discussed above, that plaintiffs have offered insufficient evidence to support a finding that either ERAC or ELCO is in the business of renting automobiles in California. Accordingly, ERAC and ELCO are entitled to summary judgment on the § 17200 claim.

■ Defendants, citing § 14604, further argue that ERAC–SF is entitled to summary judgment because the California Legislature "affirmatively permit[s] renting cars without making inquiry of the DMV." (*See* Def.'s Mot., filed November 5, 2004, at 21:17–18.) Defendants note that, for purposes of a claim under § 17200, a plaintiff cannot demonstrate that a practice is unlawful if that practice is "authorized by the Legislature." *See Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1160–62, 93 Cal.Rptr.2d 439 (2000) (holding, where plaintiff based § 17200 claim on challenge to reasonableness of refueling fee imposed by rental car agency, statute that allowed rental agencies to impose refueling fee and did not specify limit of fee acted as "safe harbor" against plaintiff's claim). In this instance, although the Legislature, in § 14604, has "not required [a vehicle owner] to inquire of the [DMV] whether the prospective driver possesses a valid driver's license," it has required that the owner make "a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license." *See* Cal. Veh.Code § 14604(a). In other words, while the Legislature has not seen fit to require vehicle owners to verify license status with the DMV, the Legislature does require some type of reasonable effort. As noted, plaintiffs here allege that defendants fail to engage in any reasonable effort. Consequently, the fact that DMV verification is not required by the Legislature is not dispositive of plaintiffs' § 17200 claim.

Plaintiffs, for their part, argue they are entitled to summary judgment because it is undisputed that ERAC–SF has a "practice of not verifying driver's licenses of prospective renters." (*See* Pls.' Mot. at 25:8–9.) ERAC–SF describes its "standard policy for license verification" as inspecting a prospective customer's license and verifying that the customer's signature matches that on the license. (*See* Defs.' Mot. at 4:7–9.) Contrary to plaintiffs' assertion, a reasonable trier of fact could find that ERAC–SF's policy allows it to verify a substantial number of licenses presented. Although, as plaintiffs point out, such procedure is unlikely to disclose whether a customer's once-valid license is currently suspended, plaintiffs have failed to demonstrate that ERAC–SF's policy is so deficient that, as a matter of law, the policy is unlawful.

Accordingly, neither plaintiffs nor defendants have shown they are entitled to summary judgment as to plaintiffs' § 17200 claim against ERAC–SF.[28]

## CONCLUSION

For the reasons stated above:

**28.** Defendants have not challenged plaintiffs' standing to seek injunctive or other relief against ERAC–SF under § 17200. Consequently, the Court does not, at the present time, consider the issue. As the issue of standing implicates subject matter jurisdiction, however, plaintiffs must be prepared to prove they have standing to seek relief under

§ 17200. *See, e.g., Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021–22 (9th Cir.2004) (holding plaintiff lacked standing to seek injunctive relief under § 17200 against insurer because plaintiff failed to show he would be "personally threatened" by any future conduct of insurer).

1. Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART, as follows:

a. Defendants ERAC and ELCO are entitled to summary judgment on all claims asserted against them.

b. Defendant ERAC–SF is entitled to summary judgment on Count III, alleging vicarious liability under § 17150 of the California Vehicle Code.

c. In all other respects, defendants' motion is denied.

2. Plaintiff's motion for summary adjudication and for summary judgment is GRANTED in part and DENIED in part, as follows:

a. Plaintiffs are entitled to summary adjudication of the issue of ERAC–SF's negligence per se.

b. In all other respects, plaintiffs' motion is denied.

This order terminates Docket Nos. 76, 86, and 98.

**IT IS SO ORDERED.**