[No. 65021-1-I.   Division One.   April 18, 2011.]

GRETCHEN WEBER, *Appellant*, v. BUDGET TRUCK RENTAL, LLC, *Respondent*.

6

*Michael S. Wampold* and *Ann H. Rosato* (of *Peterson Young Putra*), for appellant.

*Steven D. Robinson* and *Celeste M. Monroe* (of *Karr Tuttle Campbell*), for respondent.

¶1 ELLINGTON, J. — Negligent entrustment of a vehicle occurs when the person entrusting the vehicle knows or should know that at the time, the driver is not competent. Here there is no evidence that the driver appeared impaired or otherwise incompetent at the time he rented a vehicle from Budget Truck Rental, and the court properly granted summary judgment to Budget.

## BACKGROUND

¶2 At around noon on May 20, 2008, Timothy Turner entered a Budget Truck Rental office to rent a moving van. Although he had smoked methamphetamine at around 5:00 that morning, none of the three Budget agents who inter-

acted with Turner noticed any unusual behavior or signs of intoxication.

¶3 Turner presented an unexpired, facially valid Oregon driver's license. Because he had no credit card, Budget required a $150 cash deposit. Turner left the office and returned around 2:00 p.m. with the money. He completed the rental paperwork, inspected the van for damage with one of Budget's agents, and left with the van.

¶4 The following afternoon, Turner was driving the van when he ran over Gretchen Weber in a crosswalk, causing serious injury. At the scene, Officer Edward Harris observed Turner exhibiting symptoms of methamphetamine use: fast heart rate, bloodshot eyes, droopy eyelids, little to no pupil reaction to light, and "two fresh, red injection marks" on his left arm.[1] Results of a blood draw performed around 3:20 p.m. showed methamphetamine and amphetamine in Turner's system. Turner was arrested and charged with vehicular assault and driving under the influence. Following his arrest, it was discovered that Turner's license had been suspended for failure to pay a traffic ticket. Turner pleaded guilty as charged.

¶5 Weber filed this negligent entrustment suit against Budget.[2] Although the court initially denied Budget's motion for summary judgment, it granted the motion on reconsideration based, in part, on the declarations of two previously undisclosed witnesses. Weber appeals. The usual standard of review for summary judgment applies.[3]

---

[1] Clerk's Papers (CP) at 264.

[2] Weber also sued Turner for negligence; he has stipulated to liability.

[3] This court reviews summary judgment de novo. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is affirmed when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; CR 56(c). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. *Vallandigham*, 154 Wn.2d at 26 (citing *Atherton Condo Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). The moving party has the burden to show that there is no

## DISCUSSION

¶6 "A person entrusting a vehicle to another may be liable under a theory of negligent entrustment only if that person knew, or should have known in the exercise of ordinary care, that the person to whom the vehicle was entrusted is reckless, heedless, or incompetent."[4] Weber contends there is a question of fact as to whether Budget should have known Turner was unfit to drive.

¶7 Budget relies on evidence that Turner presented a current, facially valid Oregon driver's license and did not appear to be intoxicated or otherwise impaired when he rented the van. Weber contends that (1) Turner must have appeared intoxicated, and Budget agents would have recognized his condition had they been properly trained; (2) even if he displayed no symptoms of intoxication, Budget agents should have recognized Turner as an addict who was likely to drive the rental van while intoxicated; and (3) Budget violated a Washington statute and its own policies requiring customers to present a valid license and two forms of identification. Weber contends a jury could conclude Budget was negligent in renting a vehicle to Turner. We disagree.

### Turner's Drug Use

¶8 Weber's argument centers on Turner's admitted use of methamphetamine. She cites Turner's admission that he smoked methamphetamine at about 5:00 a.m. on the day of the rental and asserts it is undisputed that he was intoxicated at the time he rented the van. But Turner did not rent the van until 2:00 p.m. that day, nine hours later. Turner testified he is "high" for between two and eight hours after he uses methamphetamine, an assertion generally sup-

---

genuine issue of material fact. Once the moving party satisfies that burden, the nonmoving party must present evidence showing that material facts are in dispute. *Id.* Summary judgment is proper if the nonmoving party fails to do so. *Id.*

[4] *Mejia v. Erwin*, 45 Wn. App. 700, 704, 726 P.2d 1032 (1986).

ported by Weber's own expert forensic toxicologist, David Predmore.[5] Further, Turner testified that he had "been doing drugs for so long, I can function. I'm not completely out of it when I'm on drugs."[6] He also testified that he does not get agitated or antsy when he is high. Turner's testimony thus does not suggest that he appeared other than normal at the time of the rental.

¶9 None of the three Budget agents with whom Turner interacted suspected he was intoxicated when he rented the van. Lori Luzader handled the rental and had the most contact with Turner. She had no concerns about Turner's competence. "He seemed like just a normal person that needed to rent a truck" and "was calm."[7] Similarly, Brenda Guiranovitch observed Turner and overheard parts of his conversation with Luzader. She testified Turner did not exhibit any obvious signs of intoxication. Duane Guiranovitch, who was present and also had limited contact with Turner, noticed nothing distinctive about him. Thus, the only direct evidence is that Turner did not appear impaired at the time of rental.[8]

¶10 Weber's expert Predmore testified that given the amount of methamphetamine in Turner's system at the time of his arrest, it was probable that he exhibited "characteristic effects" of methamphetamine intoxication when he rented the van, "including restlessness, agitation, ner-

---

[5] Predmore's declaration relied on an unauthenticated document describing the effects of methamphetamine use. This document states, "Overall effects typically last 4-8 hours; residual effects can last up to 12 hours." CP at 288.

[6] CP at 178.

[7] CP at 122, 123.

[8] Weber points out that Turner's scrawled signature on the rental documents differs significantly from the one on his driver's license and argues that since Luzader is required under RCW 46.20.220(2) to compare the signatures, she should have declined to rent the vehicle unless Turner rendered a proper signature. Weber suggests Turner lacked the motor coordination to reproduce his complete signature on demand, at which point his impairment would have been clear. But the apparent purpose of the statute is to confirm the driver's identity, not his competence. Further, it is not fair inference but mere speculation that Turner could not have reproduced his signature on demand.

vousness, licking of lips, rapid, and possibly repetitive speech and dilated pupils."[9]

¶11 Predmore's testimony is insufficient to create a question of fact for trial. In *Faust v. Albertson*, our Supreme Court reiterated the longstanding rule of negligent overservice cases that "evidence on the record must demonstrate that the tortfeasor was 'apparently under the influence' by direct, observational evidence at the time of the alleged overservice or by reasonable inference deduced from observation shortly thereafter."[10] "[B]ecause the standard of liability revolves around appearance, any direct or circumstantial evidence must address actual rather than assumed appearance. Under this rule, jurors are not permitted to make an inferential leap of the 'driver's [blood alcohol content] was X, so he *must have* appeared drunk' type."[11] Predmore's testimony is of exactly this type and is similarly insufficient to prove Turner appeared intoxicated at the time of the rental.

¶12 Weber argues *Faust* should not apply to negligent entrustment cases, suggesting that overservice cases are unique because of the history of alcohol regulation and oversight. But as with liability for overservice, liability for negligent entrustment revolves around appearance.[12] Thus, a plaintiff must provide either evidence of the driver's appearance or conduct at the time of the entrustment, or

---

[9] CP at 253.

[10] 167 Wn.2d 531, 539, 222 P.3d 1208 (2009).

[11] *Id.* at 541.

[12] " 'Liability on the part of the owner is generally confined to cases where he or she entrusts a motor vehicle to one whose *appearance or conduct* is such to indicate his or her incompetence or inability to operate the vehicle with due care; to impose liability in other cases, where the incompetence of the driver is not apparent to the owner at the time of entrustment, it must be affirmatively shown that the owner had at that time knowledge of such facts and circumstances relating to the driver's incompetence to operate the vehicle as would charge the owner with knowledge of such incompetence. Such knowledge may be established by the fact that the owner knew of specific instances of carelessness or recklessness on the part of the driver.' " *Cowan v. Jack*, 2005-0175 (La. App. 4 Cir. 12/21/05), 922 So. 2d 559, 565 (quoting 8 AM. JUR. 2D *Automobiles and Highway Traffic* § 700 (1997)).

evidence that the owner was otherwise aware of the driver's incompetence at that time.

¶13 Weber also argues that *Faust*'s requirement that observations of intoxication must be contemporaneous or "within a short period of time" should be modified to account for the unique properties of methamphetamine, the effects of which can last much longer than alcohol.[13] Presumably Weber means this expanded period to include Officer Harris's observations at the time of arrest. But the arrest occurred almost 24 hours after the rental. Because Weber's evidence is that residual effects of methamphetamine intoxication last only 12 hours, the officer's observations would still not fall within any reasonable expansion of the "short period" concept.

¶14 Weber next contends Budget negligently failed to train its agents how to recognize signs of impairment. Although Budget did not give specialized training on recognizing methamphetamine intoxication, Luzader testified that she had been trained to watch for people who "come in and . . . appear intoxicated at all, under any kind of influence, just acting out of the ordinary like they might be under some kind of influence of something."[14] She was trained to "watch[ ] from the time they come in the door . . . , watch their demeanor, how they are handling things[,] . . . if they are walking straight, if they're slurring at all, if their eyes appear glassy."[15] Thus, Luzader was trained to notice unusual behavior and speech. Her testimony that Turner was "calm" and "seemed like a normal person" indicates he did not exhibit the characteristic effects of methamphetamine intoxication Predmore suggests should have been visible.

¶15 Weber next argues that Budget should have recognized Turner was a drug user, was likely to become intoxicated, and was therefore incompetent. She relies on

---

[13] Reply Br. of Appellant at 8.

[14] CP at 120.

[15] CP at 121.

*Mitchell v. Churches* for the proposition that negligent entrustment may exist where the driver is not incompetent at the time of entrustment but is only likely to become so.[16] She argues, "Because a drug user is reasonably likely to drive the vehicle he is renting in an impaired state, if the jury could reasonably conclude that Budget should have known that Turner was a drug user, summary judgment was improper."[17] This argument fails.

¶16 First, in *Mitchell* the evidence was that Churches, the car owner, loaned the vehicle to Colbard even though Colbard stated that he and his friends would drive it to "a drinking party" and "go out upon a spree."[18] Colbard showed Churches the quart of whiskey he already had with him, and Churches knew Colbard was in the habit of getting drunk.[19] The evidence showed Colbard was likely to become intoxicated while in possession of the car. Thus, the court held the evidence was sufficient to submit to the jury not on the question whether Colbard was *likely* to become incompetent but whether "Churches knew or had reason to believe that Stout and Colbard *were* incompetent or reckless persons to drive the car . . . and the circumstances were such that he was negligent in permitting them to take the car out upon that occasion."[20]

¶17 Second, the evidence Weber points to does not put Budget on notice that Turner was likely to use drugs while in possession of the vehicle. Weber relies upon Turner's many tattoos, two of which may suggest a reference to drug use; his darkened fingertips, which Weber contends is a "hallmark characteristic" of drug users who employ a glass pipe; and two injection marks, which Officer Harris described as "fresh" at the time of Turner's arrest the following day. Even if these features suggest past drug use, and

---

[16] 119 Wash. 547, 206 P. 6 (1922).

[17] Br. of Appellant at 20.

[18] 119 Wash. at 549-50.

[19] *Id.*

[20] *Id.* at 554 (emphasis added).

even if Luzader noticed them, they do not show Turner was likely to use illegal drugs while in possession of the rental van.

### Budget's Failure To Verify License Status

██ ¶18 Weber's next theory is that Budget's failure to follow both its own policies and pertinent Washington law is evidence of its negligence, and that had Budget complied with these policies, it would have recognized Turner's incompetence.

¶19 Weber's strongest argument concerns Budget's failure to confirm the validity of Turner's license.[21] Budget's internal policy requires that customers present "a valid driver's license" before renting, and RCW 46.20.220(1) makes it unlawful to rent a vehicle to a person who is not "then duly licensed." Budget contends it complies with these provisions by looking at the face of the license, and confirming that it is unexpired and belongs to the person presenting it, and that it bears no marks indicating it has been suspended or revoked. Weber argues it must do more.

¶20 Weber relies on *Snyder v. Enterprise Rent-A-Car Co.*[22] There, Enterprise rented a car to a customer presenting a facially valid license that was actually suspended. The plaintiff moved for summary judgment, arguing that Enterprise should not have rented to the driver without first electronically checking computerized department of motor vehicle records.[23] The federal district court denied the plaintiff's motion, finding a question of fact and conflicting evidence as to whether a person of ordinary prudence in the same situation would have taken the same or different action and whether the use of department of motor vehicle

---

[21] Weber also argues Budget's failure to request a second form of identification, as its policy requires, is evidence of its negligence. But the evidence is that Turner had two forms of identification. *See* CP at 188-89. Had Budget followed its policy, nothing would have prevented the rental.

[22] 392 F. Supp. 2d 1116 (N.D. Cal. 2005).

[23] *Id.* at 1127.

verification programs is standard practice in rental car industry.[24]

¶21 Weber contends there is similarly a question of fact here about whether Budget should have consulted an electronic license verification service before renting to Turner. But in *Snyder*, there was evidence that such a service was available.[25] In this case, the evidence is that no such service exists with respect to Oregon licenses.[26] Thus, even if Budget had a duty to electronically verify Turner's license status, its failure to do was not the proximate cause of Weber's injuries because doing so would not have revealed the suspension or precluded the rental.[27]

¶22 Because Weber fails to show a genuine issue of material fact with respect to whether Budget should have known Turner was incompetent at the time of the rental, summary judgment was appropriate. We affirm.

GROSSE and LAU, JJ., concur.

Review denied at 172 Wn.2d 1015 (2011).

---

[24] *Id.*

[25] *Id.*

[26] Weber contends the court should not have considered this evidence, comprised of declarations by untimely disclosed witnesses. Under local rules, the court has discretion to allow testimony by witnesses not properly disclosed "for good cause and subject to such conditions as justice requires." KCLR 26(b)(4). Since Budget provided the declarations in direct response to a theory the court itself raised at oral argument on Budget's summary judgment motion, there was good cause to consider the evidence.

[27] Several courts have held that a rental car company's failure to look beyond the facial validity of a driver's license does not establish negligence per se or negligent entrustment. *See, e.g., Cousin v. Enter. Leasing Co.-S. Cent., Inc.*, 948 So. 2d 1287 (Miss. 2007) (no evidence of negligence per se under statute requiring that owner rent vehicle only to persons "then duly licensed" where rental company accepted facially valid, unexpired licenses without further verification); *Cowan*, 922 So. 2d 559 (holding that car company has no duty to inquire further if a customer presents a valid driver's license); *Nunez v. A&M Rentals, Inc.*, 63 Mass. App. Ct. 20, 822 N.E.2d 743 (2005) (rental company had no duty to verify status of license with commercially available technology to satisfy statutory requirement to rent only to holders of "a duly issued license").