188 Cal.App.4th 822 (2010)
115 Cal. Rptr. 3d 798
JESUS FLORES et al., Plaintiffs and Appellants,
v.
ENTERPRISE RENT-A-CAR COMPANY et al., Defendants and Respondents.
No. B215105.
Court of Appeals of California, Second District, Division Four.
September 22, 2010.
*824 Steven B. Stevens for Plaintiffs and Appellants.
Rutter Hobbs & Davidoff Incorporated, Risa J. Morris and Wesley D. Hurst for Defendant and Respondent Enterprise Rent-A-Car Company.
Selman Breitman, Paul E. Stephan and Jennifer J. Capabianco for Defendant and Respondent Enterprise Rent-A-Car Company of Los Angeles.

*825 OPINION
WILLHITE, Acting P. J.

INTRODUCTION
Jesus and Concepcion Flores's son died after being struck by a car driven by Alexander Wadsworth Dederer, a customer of the defendant rental car companies, Enterprise Rent-A-Car Company (ERACC), and Enterprise Rent-A-Car Company of Los Angeles (ERAC-LA) (sometimes referred to collectively as the Enterprise defendants). Plaintiffs sued defendants for wrongful death and negligent entrustment of the vehicle, contending that an electronic check of Dederer's driving record would have revealed two arrests for driving under the influence within the previous 48 months, which should have resulted in defendants not renting the car to Dederer. Plaintiffs contend electronic driver's license checks are routinely performed in the car rental industry, and by failing to perform one on Dederer, defendants breached their duty of reasonable care. Plaintiffs argue on appeal that the trial court therefore erred in granting summary judgment in favor of the Enterprise defendants.
In this case, we consider whether rental car companies have a duty to use electronic driver's license checks to screen their clients' driving records before entrusting vehicles to them. In the seminal case of Osborn v. Hertz Corp. (1988) 205 Cal.App.3d 703 [252 Cal.Rptr. 613], the court held that in order to avoid liability for negligent entrustment, a rental car company must determine that a potential customer possesses a valid driver's license (see Veh. Code, §§ 14604, 14608), and must not rent a car to a person who appears to be mentally or physically impaired or shows other signs of incompetence. The necessity of using driver's license checks was not considered in Osborn. We conclude here that the duty owed by rental car companies articulated in Osborn remains an accurate statement of the law, regardless of the availability of electronic driver's license checks. The Legislature has defined the conduct required of rental car companies to determine the validity of customers' licenses, and it is not the province of the courts to supersede the Legislature's choice by imposing additional duties. We therefore affirm the judgments entered in favor of the Enterprise defendants. Because we find that plaintiffs have not alleged any breach of duty that was owed by these defendants, we need not discuss various other issues briefed by the parties, including issues of causation and whether ERACC is the alter ego of ERAC-LA.

*826 FACTUAL AND PROCEDURAL BACKGROUND

The Complaint
Plaintiffs filed the operative second amended complaint in August 2008, alleging causes of action against the Enterprise defendants for wrongful death (a survivorship claim), negligent entrustment, and punitive damages. They alleged that the standard of practice in the rental car industry was to screen potential renters for past convictions for driving under the influence (DUI) of drugs or alcohol, and to refuse to rent a vehicle to a potential client if he or she had one conviction within the previous 48 months. According to plaintiffs, defendants "knew or should have known that persons with DUI convictions in the past 48 months posed an unreasonable risk of harm to those using the California roadways," but nonetheless adopted a corporate policy of not performing such checks. Plaintiffs alleged that the Enterprise defendants analyzed the cost of performing electronic driver's license checks, and concluded the cost was greater than the cost of paying for the losses caused by such drivers being involved in accidents. According to plaintiffs, the Enterprise defendants' decision not to check driver's histories was made with a conscious disregard for the foreseeable harm which resulted in the death of their son. Dederer had prior DUI convictions in the last 48 months, and the Enterprise defendants should have known this information and should have declined to rent the vehicle to Dederer.

The Motion for Summary Adjudication Filed by ERAC-LA
ERAC-LA filed a motion for summary adjudication of issues, contending that plaintiffs' negligent entrustment cause of action failed because ERAC-LA had no duty to screen Dederer for prior DUI convictions, and no duty to refuse to rent to him because of his prior DUI convictions. ERAC-LA pointed out that the Legislature requires rental car companies to ascertain that a potential renter has a valid license, but also specifies that the rental car company need not check Department of Motor Vehicle records to verify the validity of licenses. (Veh. Code, §§ 14604, 14608.) It further asserted that a potential renter's having prior DUI convictions does not render that driver unfit to drive as a matter of law. ERAC-LA also argued that even assuming the standard of care in the rental car industry was to investigate potential renters' driving histories and to refuse to rent to people with DUI convictions in the past 48 months, the existence of that standard of care would not create a legal duty on its part. Finally, ERAC-LA asserted that Dederer was not driving under the influence at the time of the accident, and therefore plaintiffs could not establish legal causation in support of their cause of action for negligent entrustment.
*827 ERAC-LA acknowledged, however, that it could still be liable to plaintiffs based on "statutory ownership liability" pursuant to Vehicle Code section 17150.
In its separate statement of undisputed facts, ERAC-LA set forth that it, through its fictitious business name of Enterprise Leasing Company of Nevada, was the owner of the car driven by Dederer at the time of the accident. Dederer presented ERAC-LA with his California driver's license, which was valid. At the time of renting the car, Dederer showed no signs of being under the influence of alcohol. Dederer struck Diego Flores when he looked down to adjust his stereo. He displayed no signs of being under the influence of any substance at the scene of the accident. He was not under the influence of alcohol at the time of the accident, and was not charged with DUI as a result of the accident.
In response to a demand to provide all facts in support of the contention that the standard of care in the industry required ERAC-LA to screen Dederer for prior DUI convictions, plaintiffs had simply stated as fact that the standard in the industry was to perform a driver's license records check.

The Motion for Summary Judgment Filed by ERACC
ERACC asserted it was entitled to summary judgment for two reasons: it was not the owner of the rental car driven by Dederer and was not a party to the rental agreement, and in any event it could not be liable for failure to require ERAC-LA to conduct electronic driver's history searches because there is no legal duty to investigate the driving history of a person with a valid driver's license.

Plaintiffs' Motion to File Confidential Documents Under Seal
Plaintiffs filed a motion seeking an order allowing them to file under seal certain confidential documents which were the subject of a stipulated protective order approved by the court. ERACC joined in plaintiffs' motion. The court granted the motion and placed under seal the internal business documents of ERACC that contained trade secrets.

Plaintiffs' Opposition to the Enterprise Defendants' Motions
Plaintiffs pointed to evidence obtained through discovery that ERACC had considered using electronic driver's history checks, but decided not to do so for economic reasons, except in the State of New York. ERACC made this decision despite having determined that other major rental car companies *828 were conducting checks of driver's histories. Plaintiffs asserted that ERACC controlled the decision whether ERAC-LA, its subsidiary, would conduct driver's license checks.
Plaintiffs argued that it should be left to a jury to determine whether ERAC-LA acted as a reasonable and prudent rental car agency in the particular circumstances involved here by deciding not to use electronic driver's history screening, which was readily available and commonly used in the industry. While conceding that the standard of care in an industry does not create a duty, plaintiffs argued that evidence of custom or practice in a trade or occupation is relevant to the question of whether a defendant breached the standard of care. (Reagh v. S. F. Unified School District (1953) 119 Cal.App.2d 65, 70 [259 P.2d 43].)
In their separate statements of undisputed facts, plaintiffs set forth evidence regarding ERACC's correspondence and decisionmaking process regarding the use of electronic driver's history checks, and evidence regarding other rental car companies' practices in this regard.

The Ruling
The trial court found that the Enterprise defendants were entitled to judgment in their favor as a matter of law because the undisputed facts established that defendants satisfied their legal duty to determine that Dederer had a valid driver's license and gave no indication that he was unfit to drive at the time of the rental. Based on the relevant case law (which we discuss below), the court declined to impose an additional duty on defendants to investigate customers' DMV (Department of Motor Vehicles) records. As a matter of law, plaintiffs had not asserted a legal duty owed by the Enterprise defendants that would entitle them to judgment in their favor.[1] Accordingly, the trial court entered judgment in favor of ERACC and ERAC-LA.
This appeal followed.

DISCUSSION

I. Negligent Entrustment
Despite the existence of applicable, controlling precedent, Osborn v. Hertz Corp., supra, 205 Cal.App.3d 703 (Osborn), plaintiffs contend that the trial *829 court should not have granted summary judgment in favor of the Enterprise defendants. Plaintiffs contend that the holding in Osborn is no longer viable because in recent years electronic driver's license checks have become available to the car rental industry. According to plaintiffs, the ready availability of such information has changed the circumstances under which car rental companies operate, such that they should now be charged with the duty to inquire about a driver's history in order to screen out incompetent or unfit drivers. Many major car rental companies routinely use electronic driver's history checks, according to plaintiffs, and defendants' failure to do so constitutes a failure to use reasonable care. We conclude, however, that the holding of Osborn remains an accurate statement of the law, despite the advent of electronic driver's history checks. The rationale used by the Osborn court continues to be persuasive notwithstanding the passage of time and the growth of information technology.

A. Revisiting Osborn
In Osborn, the court held that a car rental company was not liable for injuries caused by a drunk driver who had rented a car while sober by presenting a valid driver's license. (Osborn, supra, 205 Cal.App.3d at p. 706.) The plaintiff was a woman who was injured while she was a passenger in a rental car driven by Ege, who was drunk when the accident occurred. The plaintiff sued the car rental company for negligently entrusting the car to Ege. More specifically, the plaintiff asserted that the rental car company was negligent for failing to investigate Ege's qualification to drive (by asking him a series of questions) beyond inspecting his driver's license and observing that he appeared sober at the time of the rental. Had it conducted such an investigation, it would have discovered that Ege had been twice convicted of drunk driving (most recently seven years before) and that his license had been suspended for six months. (Ibid.)
The defendant car rental company moved for summary judgment on the basis that it did not know, nor should it have known, that Ege was incompetent or unfit to drive. The plaintiff opposed the motion, contending whether the defendant knew or should have known of Ege's unfitness was a question for the trier of fact. (Osborn, supra, 205 Cal.App.3d at p. 707.) The trial court granted the motion for summary judgment, finding that the defendant owed no duty to take any measures to reduce the risk of its customers driving while drunk.
(1) The appellate court in Osborn noted that the tort of negligent entrustment of a motor vehicle is premised on the vehicle owner's wrongfully allowing another to use a vehicle when the owner knows or should know the driver is incompetent. "`It is generally recognized that one who places or *830 entrusts his [or her] motor vehicle in the hands of one whom he [or she] knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable for an injury inflicted by the use made thereof by that driver, provided the plaintiff can establish that the injury complained of was proximately caused by the driver's disqualification, incompetency, inexperience or recklessness . . . . [¶] "Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been known to the owner." [Citations.]'" (Osborn, supra, 205 Cal.App.3d at pp. 708-709.) A rental car company may be held liable for negligently entrusting one of its cars to a customer it knows or should know is an incompetent or unsafe driver. (Id. at p. 709.)
As with any claim of negligence, the standard by which the conduct of the vehicle owner is to be measured is based upon the care which an ordinarily prudent person would exercise under similar circumstances. The question whether a particular owner's conduct measures up to that standard is generally a question of fact for the jury. (Owens v. Carmichael's U-Drive Autos, Inc. (1931) 116 Cal.App. 348, 350 [2 P.2d 580].) However, whether a legal duty is present in a particular case is a question of law for the court. (Lindstrom v. Hertz Corp. (2000) 81 Cal.App.4th 644, 648 [96 Cal.Rptr.2d 874].)
The required standard of conduct in the context of a claim for negligent entrustment of a car must be considered in relation to any applicable statutory requirements, as well as the rental car company's direct observation of the potential renter's apparent fitness to drive. Importantly, we note, as did the court in Osborn, that Vehicle Code section 14608 prohibits a rental car agency from renting to unlicensed drivers, and requires such companies to inspect the renter's driver's license. "No person shall rent a motor vehicle to another unless: [¶] (a) The person to whom the vehicle is rented is licensed under this code or is a nonresident who is licensed under the laws of the state or country of his or her residence. [¶] (b) The person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared the signature thereon with the signature of that person written in his or her presence." (Veh. Code, § 14608, subds. (a) & (b).)[2]
In addition to statutorily imposed duty, a rental car company also has a duty not to entrust a car to a person known to the agency to be intoxicated at the time of the rental (Osborn, supra, 205 Cal.App.3d at p. 709), or to someone who appears to be mentally or physically impaired or shows other *831 signs of incompetence at the time the vehicle is rented. (Lindstrom v. Hertz Corp., supra, 81 Cal.App.4th at p. 649.) According to plaintiffs, it is therefore clear that compliance with the statutes, i.e., checking the validity of a license and the authenticity of the signature, is not enough to avoid liability. In order to demonstrate reasonable care, a rental car company has duties beyond those imposed by statute.
While that statement is true, it overlooks the essential point made in Osborn: the Legislature has addressed the consequences of driving while under the influence of alcohol or drugs, and it is not for the courts to judicially expand upon those consequences by imposing a duty on rental car companies to refuse to rent cars to those convicted of driving while intoxicated. As stated in Osborn: "By its enactment of various provisions of the Vehicle Code, the Legislature has carefully delineated, according to the seriousness of the offenses, the disabilities that are to be suffered by those convicted of drunk driving. (See §§ 23152-23217.) As relevant here, these disabilities include suspension or revocation of a driver's license for various periods of time. (See § 13352.) Under this statutory scheme, neither a prior record of drunk driving nor a past refusal of insurance nor a prior suspension or revocation of a driver's license disqualifies a citizen from owning or driving a vehicle provided the legal disability has been cured and the citizen holds a valid driver's license. (See §§ 13101, 13102, 13352.) Accordingly, plaintiff implicitly argues that the past legal transgressions of citizens, even though cured in the eyes of the Legislature, should disqualify them from renting cars. [¶] However, we think this detailed statutory scheme reflects a careful balance struck by the Legislature between the dangers of drunk driving and the recognition that driving a car may be `essential in the pursuit of a livelihood.' [Citations.] We see no reason to disturb this carefully considered balance." (Osborn, supra, 205 Cal.App.3d at pp. 710-711.)
(2) Similar to the assertions made by the plaintiff in Osborn, plaintiffs here seek to impose a duty on rental car companies to ascertain whether the prospective renter had a record of DUI, or had his license suspended or revoked for DUI. (See Osborn, supra, 205 Cal.App.3d at p. 710.) The difference here, according to plaintiffs, is the availability of electronic driver's history checks, which were not mentioned in Osborn. But that distinction makes no difference. The court in Osborn would have reached the same conclusion even if such electronic checks were available. The Osborn court plainly stated that if the driver had informed the defendant about his prior drunk driving convictions, the defendant rental car company would not have been negligent in renting to the driver in light of that knowledge. (Ibid.) "[A]n ordinarily prudent car rental agency is not obligated to ask its customers for information that has no useful purpose." (Ibid.) Likewise, an ordinarily prudent car rental agency is not obligated to use an electronic driver's history service to check DMV records for information that serves no *832 useful purpose because information garnered from it, that the driver had a previous suspension or revocation, would not prevent the agency from renting to such a driver.
Plaintiffs assert that defendants should have known about Dederer's prior license suspension and, based on that information, should have refused to rent a car to him. But the Legislature has not chosen to impose such a rule. As recognized by the Osborn court, the practical effect of such a rule would be to make it impossible for anyone previously convicted of drunk driving, or whose license was once suspended, from renting a car, thus imposing a severe hardship on responsible citizens who depend on rental cars to do their jobs. (Osborn, supra, 205 Cal.App.3d at p. 711.) "If the past legal transgressions cited by plaintiff should disqualify citizens from driving rental cars, the Legislature should say so. Absent such legal disqualification, defendant was entitled to rely upon Ege's valid driver's license as sufficient evidence of his ability to drive. (See § 14608.)" (Ibid., fn. omitted.) Similarly, defendants were entitled to rely upon Dederer's valid driver's license, coupled with his apparent sobriety, as sufficient evidence of his ability to drive. We decline to impose a duty on ERAC-LA to electronically check a prospective driver's history to screen for prior impaired driving convictions or license suspensions before renting a vehicle to him or her.

B. Legislative Assent Since Osborn
Our agreement with the rationale and conclusion expressed in Osborn is bolstered by events following the Osborn court's direct invitation to the Legislature to reconsider the applicable statutory scheme in light of its decision. Namely, the Legislature enacted section 14604, which further defined the obligation of rental car companies, in a manner consistent with Osborn. In addition, the Legislature has declined to further amend the Vehicle Code after the California Supreme Court brought the availability of electronic driver's license checking to rental car companies squarely to the Legislature's attention in Philadelphia Indemnity Ins. Co. v. Montes-Harris (2006) 40 Cal.4th 151 [51 Cal.Rptr.3d 709, 146 P.3d 1251] (Philadelphia).

1. Section 14604

Section 14604, enacted six years after Osborn (Stats. 1994, ch. 1221, § 14, p. 7565), prohibits all vehicle owners (including rental companies) from entrusting a vehicle to an unlicensed driver, and addresses the nature of the effort required by an owner to determine the driver's licensing status. It provides: "(a) No owner of a motor vehicle may knowingly allow another person to drive the vehicle upon a highway unless the owner determines that the person possesses a valid driver's license that authorizes the person to *833 operate the vehicle. For the purposes of this section, an owner is required only to make a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle. An owner is not required to inquire of the department[3]whether the prospective driver possesses a valid driver's license. [¶] (b) A rental company is deemed to be in compliance with subdivision (a) if the company rents the vehicle in accordance with Sections 14608 and 14609."[4] (Italics added.)
Taken together, sections 14604 and 14608 provide that a reasonably prudent rental car company is prohibited from renting a car to an unlicensed driver, and must "make a reasonable effort" to determine whether the prospective driver possesses a valid driver's license, which does not include checking DMV records. It is sufficient for the rental car company to examine the license, and compare the signature on the license to one written by the prospective renter in the presence of the rental company's agent.[5] If a rental car agency is not required to check DMV records to ascertain the validity of a customer's licensethe fundamental requirement imposed by the Legislature in the interest of public safetyit is inescapable to conclude that the agency would not be required to do so to investigate a customer's driving history. That is precisely the conclusion reached by the California Supreme Court when it considered the effect of sections 14604 and 14608 in a related context.

2. The Philadelphia Case

Decided in 2006, Philadelphia, supra, 40 Cal.4th 151, is highly instructive for our purposes. While the defendant in that case was the excess insurer of a rental car company rather than the rental car company itself, the court's discussion of the duties imposed on a car rental company to investigate the validity of a driver's license before renting out a vehicle provides important guidance to our decision here.
In Philadelphia, an insurer had issued to a car rental agency a master excess policy of supplemental liability insurance, which provided third party automobile liability coverage. The rental agency had authority to enroll its customers under the policy as additional insureds if the customers chose to do so. The policy excluded coverage for injuries arising out of the use of a rental *834 car obtained through fraud or misrepresentation. (Philadelphia, supra, 40 Cal.4th at pp. 155-156.) A prospective renter presented an apparently valid driver's license to the rental company and was permitted to rent a vehicle. He opted to purchase coverage under the excess policy. (Ibid.) The driver was later involved in a car accident, and it was then discovered that his driver's license had been suspended two months earlier. Several people who were injured in the accident sued the driver and the car rental agency in state court. (Id. at p. 156.) The excess insurer brought an action in federal district court, and successfully sought a judgment declaring that it had no liability for damages because the driver had misrepresented that his license was valid, and the excess policy excluded coverage for rentals obtained through misrepresentation. (Ibid.)
The injured third party claimants filed an application for relief from the district court judgment, asserting that automobile liability insurers have a nondelegable duty to undertake a reasonable investigation of insurability within a reasonable period of time after issuance of a policy in order to preserve the insurer's right to rescind the policy based on the insured's misrepresentations. (Philadelphia, supra, 40 Cal.4th at p. 156.) The district court denied the application, and the third party claimants appealed. The Ninth Circuit requested that the Supreme Court address whether the duty to undertake a timely investigation of insurability, in order to be entitled to rescind for misrepresentation, applies to an excess insurer in the context of a rental car transaction. (Id. at p. 157.) The Supreme Court did not find it necessary to decide that specific question. Instead, it assumed for purposes of argument that such a duty existed, but found that the excess insurer did not breach that duty as a matter of law under the circumstances presented. (Id. at p. 161.) The court concluded that "where ... the sale of excess liability insurance in a rental car transaction occurs after the rental car customer presents a facially valid driver's license and after the license inspection and signature verification requirements of Vehicle Code section 14608, subdivision (b), have been met, the excess insurer has no obligation to conduct a further inquiry regarding the validity of the customer's driver's license." (Id. at p. 155.) The excess insurer may avoid liability to third persons if it acts promptly upon discovering the license suspension.
In discussing its conclusion that there was no breach of any duty to investigate insurability, the court pointed to the language of section 14604, subdivision (a), which requires a vehicle owner to make a reasonable effort or inquiry to determine the validity of the license held by a prospective driver, but specifies that the owner need not inquire of the DMV. (Philadelphia, supra, 40 Cal.4th at p. 161.) The court further noted that section 14604, subdivision (b), clarifies that a rental car company is deemed to have complied with the "reasonable effort or inquiry" mandate by visually inspecting the person's driver's license and verifying the person's signature in *835 accordance with section 14608 (also discussed above). Because the rental car agent, acting as an agent for the excess insurer, had fully complied with section 14608, the excess insurer was deemed to have fulfilled its obligation to investigate the driver's insurability. (40 Cal.4th at p. 163.)
It is true that the Philadelphia decision involved discussion of the duties owed by rental car companies to investigate driver's license validity for purposes of determining insurability, while the issue here is the duty to investigate license validity in order to determine fitness to drive. Nonetheless, the court in Philadelphia addressed the obligations that have been imposed by the Legislature upon rental car companies to investigate the validity of driver's licenses in the interest of public safety, in a manner that is highly relevant to our discussion.
The Legislature struck a balance between safeguarding the driving public and enabling rental car companies to do business. The Philadelphia court observed that "the enactment of section 14604 in 1994 was part of an overall legislative effort to address the serious public safety danger posed by unlicensed drivers and drivers with suspended or revoked licenses. Because section 14604 specifically addresses rental car situations, that provision is reasonably viewed as reflecting a legislative policy decision that, given the unique nature and operational constraints of the rental car business, compliance with the inspection duties set forth in section 14608, subdivision (b), is an appropriate safeguard against the problem of unlicensed drivers in the rental car context." (Philadelphia, supra, 40 Cal.4th at p. 162, fn. omitted.)
Notably, the Philadelphia court rejected the argument made by the claimants that rental car companies (acting as agents for excess insurers) should be equipped to perform license checks with the DMV. The court expressed concerns about the privacy rights of rental customers, the potential congestion of the DMV's computer systems, and the potential delay for rental car companies and their customers. But more importantly, the court stressed that the Legislature has spoken. "Because the Legislature has not seen fit to require DMV license checks or other specific investigatory measures on the part of an owner and typical provider of mandatory coverage in the rental car context, we shall decline to judicially impose such obligations on the offeror of optional excess coverage for purposes of preserving its rights to rescind an excess policy or invoke an exclusion clause based on a rental car customer's presentation of a facially valid but suspended driver's license. Moreover, while the Legislature might consider after this opinion whether further investigation should be required of a rental car company, and by extension an excess insurer, we remain mindful that the Legislature stands in the best position to identify and weigh the competing consumer, business, and public safety considerations that present themselves in the rental car context." (Philadelphia, supra, 40 Cal.4th at p. 163, italics added.)
*836 (3) We presume the Legislature is aware of the Supreme Court's decision in Philadelphia. (See In re Anthony C. (2006) 138 Cal.App.4th 1493, 1521 [42 Cal.Rptr.3d 370].) Since the Philadelphia case was decided, in 2006, the Legislature has not amended the statutory scheme to impose additional investigatory obligations on rental car companies. The Legislature has made no changes reflecting disagreement with the Philadelphia decision or reconsideration of the duties imposed on rental car companies to investigate driver's license validity or history.[6] When a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, we may presume that the Legislature is aware of the judicial construction and approves of it. (See People v. Meloney (2003) 30 Cal.4th 1145, 1161 [135 Cal.Rptr.2d 602, 70 P.3d 1023].)
(4) Accordingly, we will not impose a duty on rental car companies in excess of what the Legislature has required. Doing so would interfere with the Legislature's prerogative to establish the consequences that accompany driver's license suspension or revocation as a result of driving while impaired. We are in full agreement with Osborn, supra, 205 Cal.App.3d 703. We add to the discussion the more specific conclusion that, as a matter of law, rental car companies do not have a duty to use electronic driver's license checks in order to avoid liability for negligent entrustment, where the rental car company has fully complied with the requirements set forth in section 14608 and the potential driver does not appear impaired or otherwise unfit to drive at the time of rental. Whether ERAC-LA should have used an electronic DMV records check in order to comply with its duty to exercise reasonable care is not, as plaintiffs argue, a question of fact to be decided by the fact finder. Rather, we conclude that ERAC-LA did not have a legal duty to use an electronic DMV records check in addition to complying with section 14608 and determining that Dederer appeared competent to drive. Indeed, had ERAC-LA discovered the prior suspensions of his license, it would not have been obligated to refuse to rent a car to him.
Because plaintiffs rely heavily on it, we briefly address Snyder v. Enterprise Rent-A-Car, San Francisco (N.D.Cal. 2005) 392 F.Supp.2d 1116 (Snyder), a case decided by a federal district court prior to the filing of the Supreme Court's opinion in Philadelphia. The federal court in Snyder, construing California law, held that triable issues of fact existed regarding whether a person of ordinary prudence would use an electronic check of a driver's records to verify the licensing status of a renter who later killed the plaintiffs' daughter in a car accident, while driving under the influence of drugs and *837 alcohol and with a suspended license. In finding that summary adjudication of the plaintiffs' negligence claim was precluded, the court noted that the evidence was conflicting as to whether the use of DMV verification programs was standard practice in the rental car industry in California. (Snyder, supra, 392 F.Supp.2d at p. 1127.) The court further held that the defendant rental car company was not entitled to summary judgment on the plaintiffs' claim for punitive damages because, in the absence of taking any steps to verify the validity of the renter's license, the rental car company ran the risk of renting vehicles to unlicensed people and, aware of the probable dangerous consequences of their conduct, deliberately failed to avoid those consequences. (Id. at p. 1130.) Suffice it to say that Snyder is not controlling authority, and we find that it does not accurately reflect the state of California law regarding negligent entrustment of rental vehicles. As we have discussed at length, we conclude that under California law a rental car company does not have a duty to use electronic DMV records checks before entrusting a rental car to a driver, where the rental car company has complied with section 14608 and the prospective renter appears competent to drive. In light of this conclusion, it is not necessary to discuss whether plaintiffs adequately demonstrated that the standard in the rental car industry is to use electronic DMV checks; that becomes irrelevant. We also need not discuss issues of causation, such as whether Dederer was or was not impaired at the time of the accident, and whether a driver with prior license suspensions poses a foreseeable risk of harm to the driving public. The only remaining issue we must address is whether the trial court properly entered judgment in favor of ERAC-LA, after it moved only for summary adjudication of issues.

II. Additional Statutory Ground for Vehicle Owner's Liability
Plaintiffs point out that ERAC-LA moved for summary adjudication of issues only, not summary judgment. In fact, ERAC-LA conceded in its moving papers that it remained potentially liable under section 17150 as the owner of the vehicle whose driver struck and killed plaintiffs' son.[7] Nevertheless, the trial court granted summary judgment in its favor. Plaintiffs contend on appeal that the trial court erred in doing so.
In response, ERAC-LA argues that, even if the trial court erred in granting summary judgment, plaintiffs were not prejudiced because no further recovery would be available on remand because plaintiffs have settled their case as to Dederer for payment of the statutory maximum available from Dederer and *838 ERAC-LA jointly.[8] ERAC-LA filed a request that we take judicial notice of documents indicating that Dederer and plaintiffs settled the matter for $15,000 shortly after judgment was entered in favor of the Enterprise defendants. We granted the request.
(5) Where a vehicle's operator settles the claim of a third party injured due to the operator's negligence for a sum equal to, or in excess of, the amount of the vehicle owner's statutory liability for the operator's negligence, the owner's obligation is discharged. (Rashtian v. BRAC-BH, Inc. (1992) 9 Cal.App.4th 1847, 1853 [12 Cal.Rptr.2d 411].) Because the documents of which we take judicial notice sufficiently establish that Dederer settled with plaintiffs for $15,000, there can be no statutory liability remaining to be claimed against ERAC-LA. Thus, it would be an idle act to remand the matter to the trial court based on error in the court's granting summary judgment rather than summary adjudication.
(6) "`[W]here matters of which the court has judicial knowledge occur subsequent to the trial court's action and have the effect of destroying the basis for the plaintiff's cause of action, it has been held that the appellate court may dispose of the case upon those grounds.'" (City of National City v. Wiener (1992) 3 Cal.4th 832, 850 [12 Cal.Rptr.2d 701, 838 P.2d 223] (conc. opn. of Baxter, J.), quoting International etc. Workers v. Landowitz (1942) 20 Cal.2d 418, 423 [126 P.2d 609], citing Sewell v. Johnson (1913) 165 Cal. 762, 769 [134 P. 704].) Plaintiffs' postjudgment settlement with Dederer foreclosed any further action pursuant to section 17150, and we therefore dispose of plaintiffs' contention of error on those grounds. Any error in the court's granting summary judgment was harmless, a conclusion that plaintiffs appear to have conceded given their omission of any reference to the matter in their reply brief on appeal.[9]

*839 DISPOSITION
The judgments entered in favor of the Enterprise defendants are affirmed. Costs on appeal are awarded to the Enterprise defendants.
Manella, J., and Suzukawa, J., concurred.
NOTES
[1] The trial court correctly noted that plaintiffs' wrongful death and survivorship claims were premised upon the assertion that the Enterprise defendants negligently entrusted the vehicle to Dederer. Resolution of the negligent entrustment claim in favor of the Enterprise defendants therefore also defeated the remainder of plaintiffs' other claims.
[2] All further undesignated statutory references are to the Vehicle Code.
[3] Here, "department" means the DMV. (§ 290.)
[4] Section 14609 requires those renting a motor vehicle to another person to keep a record of the vehicle's registration number, the name and address of the renter, and the renter's driver's license number, expiration date, and issuing jurisdiction.
[5] The rental car company also must record certain information regarding the driver's license (§ 14609), but ERAC-LA's compliance with that requirement is not at issue here.
[6] The Legislature has since amended other sections within the chapter of the Vehicle Code regarding violation of license provisions, in which sections 14604, 14608 and 14609 are located (see, e.g., §§ 14601.5, 14602.6, 14602.8), but none of these amendments have any bearing on the issues discussed here.
[7] Section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."
[8] Section 17151, subdivision (a), limits the liability of an owner (not arising through the relationship of principal and agent or master and servant) to $15,000 for the death or injury of one person.
[9] We note that Code of Civil Procedure section 437c, subdivision (m)(2) provides: "Before a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs. The supplemental briefing may include an argument that additional evidence relating to that ground exists, but that the party has not had an adequate opportunity to present the evidence or to conduct discovery on the issue." However, providing the parties with an opportunity to submit supplemental briefing pursuant to this provision is not warranted here. In February 2010, ERAC-LA filed its request that we take judicial notice of the documents indicating plaintiffs settled with Dederer for $15,000, and also filed its respondent's brief in which it argued that plaintiffs suffered no prejudice as a result of the court's granting summary judgment because no further recovery from ERAC-LA would be permissible. Plaintiffs had the opportunity to present their views on the issue in their reply brief filed thereafter, and to argue that additional evidence relating to the issue existed, but plaintiffs did not do so. We take their silence on the matter as acquiescence that they were not prejudiced by the court granting summary judgment because no further recovery would be permissible pursuant to sections 17150 and 17151.